UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GUILLERMO RODRIGUEZ, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  4:11CV01658 AGF |
| | ) | |
| MONSANTO CO., SOLUTIA, INC., | ) | |
| PHARMACIA CORP., and PFIZER, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion to remand this case to the Circuit Court for St. Louis County, Missouri.  For the reasons set forth below, this motion shall be granted.

**BACKGROUND**

This action involves claims by four individuals who allege that they developed non-hodgkin's lymphoma resulting from their exposure to polychlorinated biphenyls.  Plaintiffs allege that the culpable conduct of Defendants is responsible for Plaintiffs' exposure.

On August 23, 2010, Plaintiffs filed this action in the Circuit Court for St. Louis County, Missouri.  From May 1, 2009, through September 9, 2011, ten other similar suits were brought against Defendants by varying numbers of plaintiffs, all under 100 and all

1

represented by the attorneys who represent Plaintiffs herein.[1]  On September 23, 2011, Defendants removed this action to this Court pursuant to the "mass action" provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(11)(A) and (B)(i).  On October 10, 2011, Plaintiffs filed a motion to remand the case to state court.  Plaintiffs argue that the present case does not fall within the definition of a "mass action," therefore defeating federal jurisdiction in this matter.  The Court agrees.

## DISCUSSION

The issue before the Court is whether the 11 individual state court actions, each with fewer than 100 plaintiffs, should be treated as one "mass action" eligible for removal to federal court under CAFA.  As stated in the Act, the purpose of CAFA is to "(1) assure fair and prompt recoveries for class members with legitimate claims; (2) restore the intent of the framers . . . by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction; and (3) benefit society by encouraging innovation and lowering consumer prices."  28 U.S.C. § 1711(b).  Under § 1332, CAFA extends federal removal jurisdiction to "mass actions," which are defined as "any civil action (except a [class action]) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common

---

[1] Nine of these actions were filed in Missouri state court; the other two were filed in California state court.  The other cases removed to this district are *Walker v. Monsanto Co.*, 4:11CV01654 CEJ; *Stapleton v. Monsanto Co.*, 4:11CV01656 AGF; *Nunn v. Monsanto Co.*, 4:11CV01657 CEJ; *Dublin v. Monsanto Co.*, 4:11CV01659 CEJ; *Hammonds v. Monsanto Co.*, 4:11CV01660 DDN; and *Hampton v. Monsanto Co.*, 4:11CV01662 CEJ.

2

questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). CAFA further states that "the term 'mass action' shall not include any civil action in which . . . (II) the claims are joined upon motion of a defendant . . . [or] (IV) the claims have been consolidated or coordinated solely for pretrial proceedings." *Id.* § 1332(d)(11)(B)(ii).

The first principle of statutory construction requires a court to determine whether congressional intent is clear from the plain meaning of the statute. *Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1004 (8th Cir. 2002). The Supreme Court has emphasized that, "[i]n ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988). "In interpreting the statute at issue, [courts] 'consider not only the bare meaning' of the critical word or phrase [at issue], 'but also its placement and purpose in the statutory scheme.'" *Holloway v. United States*, 526 U.S. 1, 6 (1999) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)).

In this case, congressional intent is clear from the plain meaning of the statute. CAFA narrowly defines mass actions. As stated above, CAFA defines a mass action as "any civil action (except a [class action]) in which monetary relief claims of 100 or more persons are proposed to be tried jointly . . . ." 28 U.S.C. § 1332(d)(11)(B)(i)  Here, there are not 100 or more persons who have been proposed to be tried jointly. This precise issue has been addressed by the Seventh and Ninth Circuits, which both held that plaintiffs could avoid federal removal jurisdiction under CAFA by carving their filings

3

into separate pleadings. *See Anderson v. Bayer Corp.,* 610 F.3d 390, 393-95 (7th Cir. 2010); *Tanoh v. Dow Chem. Co.,* 561 F.3d 945, 953 (9th Cir. 2009). As the Ninth Circuit stated in *Tanoh*, "Congress appears to have foreseen the situation presented in this case and specifically decided the issue in plaintiffs' favor." *Tanoh,* 561 F.3d at 953. "In addition to requiring that a 'mass action' shall include the claims of at least one hundred plaintiffs 'proposed to be tried jointly,' § 1332(d)(11) specifically provides that 'the term 'mass action' shall not include any civil action in which . . . the claims are joined upon motion of a defendant.'" *Id*. (citing 28 U.S.C. § 1332 (d)(11)(B)(ii)(II)).

Defendants argue that the 11 separate law suits filed by Plaintiffs' attorneys are a transparent attempt to circumvent CAFA. In support, Defendants cite *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008), and *Westerfeld v. Independant Processing, LLC,* 621 F.3d 819 (8th Cir. 2010). However, those cases address CAFA's class action provisions and not its mass action provisions. And as the courts in *Anderson* and *Tanoh* recognized, *Freeman* involved a different matter, namely, an attempt by the same class of plaintiffs to split their lawsuits into "completely arbitrary" time periods, with each suit claiming under $5 million, in order to creatively avoid CAFA's $5 million threshold. *Anderson*, 610 F.3d at 393; *Tanoh*, 561 F.3d at 955. Referencing *Freeman* and a similar district court case, the Ninth Circuit in *Tanoh* explained:

> Central to the courts' holdings, however, was the fact that both sets of plaintiffs split their claims in an effort to seek well over $5 million in total damages without triggering federal removal jurisdiction. As the Sixth Circuit [in *Freeman*] explained, plaintiffs are generally allowed to plead around federal jurisdiction at a cost: they must limit the damages

4

> they seek to less than CAFA's $5 million threshold. *See* 551 F.3d at 409. Permitting plaintiffs to split their claims arbitrarily by time period threatened to subvert this rule, enabling plaintiffs to seek well over the $5 million–in *Freeman*, for example, almost $25 million among the five suits–without subjecting themselves to federal removal jurisdiction. The court rebuffed this end-run around CAFA, holding that "where recovery is expanded, rather than limited, by virtue of splintering of lawsuits for no colorable reason, the total of such identical splintered lawsuits may be aggregated." *Id.*

*Tanoh*, 561 F.3d at 955. Those concerns are not present here.

*Westerfeld* also involved a different issue than raised here. In *Westerfeld*, the issue before the Eighth Circuit involved construction of CAFA's local-controversy exception. Relying significantly on the definition of the term "Class" in the statute, the Eighth Circuit found that "whether an in-state defendant is a significant defendant for purposes of the local-controversy exception must be determined by considering the claims of 'all of the members in [the] class action' and not by considering the claims of class members on a class-by-class basis." *Westerfeld*, 621 F.3d at 824-25.

While the courts in *Freeman* and *Westerfeld* were concerned not to construe the statute in a manner that permitted the parties to subvert the requirements and the language of the statute, neither case involved the language and provision at issue here. This Court agrees with the Seventh and Ninth Circuits, that the mass action provision of CAFA gives plaintiffs the choice to file multiple separate actions that do not each qualify for CAFA jurisdiction. Defendants' argument that "these separate lawsuits be treated as one action is tantamount to a request to consolidate them - a request that Congress has explicitly

5

stated cannot become a basis for removal as a mass action." *See Anderson,* 610 F.3d at 393-94.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand this case to the Circuit Court for St. Louis County, Missouri, is **GRANTED**. (Doc. No. 10)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of November, 2011.